**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:09cv56
[Criminal Case No. 1:05cr249-1]**

| | |
|---|---|
| **CORY WILLIAM JONES,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1] and Respondent's Motion for Summary Judgment [Doc. 7].

## PROCEDURAL BACKGROUND

On October 4, 2005, Petitioner Cory William Jones and co-defendant Amy Coffey were charged in a Bill of Indictment with conspiracy to manufacture with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 and 846 (Count One).  [Case No. 1:05cr249, Doc. 1].  Petitioner was also charged with unlawful possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Two).  [Id.].

Petitioner made his initial appearance before Magistrate Judge Dennis Howell on November 7, 2005. [Case No. 1:05cr249, Doc. 1]. Petitioner, represented by retained counsel Eric F. Eller, appeared for an arraignment before Judge Howell on November 9, 2005, entered pleas of not guilty, and was ordered detained. [Id., Doc. at 10]. On December 6, 2005, Petitioner was released on a $25,000 unsecured bond and pretrial supervision. [Id., Doc. at 28].

On December 9, 2005, Petitioner, through counsel, filed a motion to suppress evidence obtained from a search of Petitioner's home on February 24, 2005. [Id., Doc. 30]. The Government filed a response to Petitioner's motion to suppress on December 16, 2005. [Id., Doc. 34]. The Court deferred ruling on Petitioner's motion until trial. [Id., Doc. 39].

The case was set for trial on Monday, January 9, 2006. On that date, before jury selection and commencement of the trial, the Court[1] conducted a hearing on the motion to suppress. [Id., Doc. 83]. After hearing testimony from both government witnesses and defense witnesses, including Petitioner, the Court denied Petitioner's motion to suppress. [Id., Doc. 83 at 59 and Doc.

---

[1]These proceedings were conducted by the Honorable Lacy H. Thornburg, United States District Judge. This case was reassigned to the undersigned upon Judge Thornburg's retirement in 2009.

2

44].  Petitioner then advised the Court that he wanted to change his plea, subject to the right to appeal the Court's denial of his motion to suppress.  [Id., Doc. 83 at 59-60].  The parties announced their oral agreement that in exchange for Petitioner's plea of guilty to the drug conspiracy charged in Count One, the Government would move to dismiss the § 924(c) violation charged in Count Two.  The parties further agreed that a two-level sentencing enhancement for the presence of a firearm was applicable under U.S.S.G. § 2D1.1.  [Id., Doc. 83 at 59, 62-63].

The Court then placed Petitioner under oath and engaged him in its standard, lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered.  [Id. at 59-70].  In response to the Court's numerous questions, Petitioner gave answers that established that he was not under the influence of intoxicating liquors, narcotics, medicines, or drugs of any kind; that he had reviewed the Indictment with counsel; that his mind was clear and that he understood he was entering a guilty plea that could not be withdrawn at a later time; that he understood the terms of the oral plea agreement as stated by the prosecutor; and that he understood that the minimum term of imprisonment was not less than ten years nor more than life.  [Id. at 61-64].

Case 1:09-cv-00056-MR   Document 15   Filed 03/19/12   Page 3 of 32

Petitioner further stated that he understood his sentence could not be determined until after preparation of the Presentence Report (PSR) and that his sentence would be determined in the Court's sound discretion using the Sentencing Guidelines in an advisory capacity. [Id. at 66]. Significantly, Petitioner swore that he was entering a guilty plea because he was in fact guilty of the drug conspiracy charged in Count One of the Indictment; that his guilty plea was made voluntarily and was not the result of coercion, threats or promises, other than those contained in the oral plea agreement; that he was satisfied with the services of his attorney; and that he understood all the parts of the proceeding, knew what he was doing, and wanted the Court to accept his guilty plea. [Id. at 67-68].

Based on Petitioner's answers to the questions propounded to him during the Rule 11 inquiry, the Court found that Petitioner's plea was made knowingly and voluntarily, and with an understanding of the charges as well as the potential penalties and consequences of the plea, and the Court therefore accepted Petitioner's plea of guilty to Count One. [Id. at 69]. Petitioner also signed the Entry and Acceptance of Guilty Plea (Rule 11 Proceeding), which memorialized his oral responses to the Court's inquiries.

4

[Id., Doc. 43]. Following the entry of his guilty plea, Petitioner remained on bond under pretrial supervision.

On February 3, 2006, Petitioner was arrested for violating a condition of pretrial release by being present at a residence where law enforcement attempted to conduct an undercover drug purchase. [Id., Doc. 47]. On February 15, 2006, the Court conducted a hearing on the violation. Although the Court found that Petitioner had not violated the conditions of his pretrial release, the Court modified the terms of Petitioner's release to home detention with electronic monitoring. [Id., Doc. 48; PSR at ¶6]. Thereafter, on March 28, 2006, Petitioner tested positive for marijuana and admitted to having used marijuana on March 25, 2006. The Probation Office filed a violation report on April 7, 2006. After a hearing held on April 21, 2006, the Court revoked Petitioner's bond and ordered him detained. [Id., Doc. 52; PSR at ¶6].

On October 23, 2006, the Court granted Eric Eller's motion to withdraw as Petitioner's counsel based on Petitioner's statement that he wanted to terminate Eller's services and obtain court-appointed counsel. [Id., Docs. 65 and 66]. Thereafter, attorney Carol Ann Bauer was appointed to represent Petitioner.

5

On or about November 13, 2006, the Probation Office prepared a Presence Report (PSR) in which the Probation Officer calculated an offense level of 37, a criminal history category of I, and an applicable Guidelines range of 210 to 262 months imprisonment. [PSR at ¶¶27, 39, 57]. The Probation Officer noted that while Petitioner had admitted participation in the offense charged in Count One and accepted responsibility for his actions, his continued unlawful conduct of using marijuana on March 25, 2006, did not "clearly demonstrat[e] acceptance of responsibility." [Id. at ¶15].

On November 20, 2006, Petitioner filed three objections to the PSR: namely, to the finding regarding the number of times he admitted to cooking methamphetamine, to the finding regarding the amount of methamphetamine he admitted producing, and to the three-level sentencing enhancement pursuant to U.S.S.G. § 2D21.1(b)(6)(B) based on the substantial risk of harm to the environment created by his actions.

Petitioner's sentencing hearing was conducted on January 4, 2007. [Id., Doc. 84]. At sentencing, the parties stipulated that there was a factual basis to support Petitioner's guilty plea and that the Court could accept the evidence contained in the PSR to establish the factual basis. [Id., Doc. 84 at 2]. Based on the parties' stipulation, the evidence contained in the PSR, and Petitioner's

6

admission of guilt, the Court found that there was a sufficient factual basis to support Petitioner's guilty plea, accepted the plea, and entered a verdict of guilty. [Id., Doc. 84 at 2-3].

The Court then heard counsels' arguments regarding Petitioner's objections to the PSR. Defense counsel argued that Petitioner had been "misunderstood or misquoted" concerning the number of methamphetamine cooks he had made and the amount of methamphetamine he had produced. [Id. at 4]. Specifically, counsel argued that Petitioner had advised her that he had admitted to cooking methamphetamine between five and seven times, not the 20 to 30 times stated in the PSR, and that he believed he was only responsible for 16 grams of methamphetamine. [Id.]. Counsel further argued against the three-level sentencing enhancement for creating a environmental hazard, stating that in her review of the Government's discovery material there was no evidence that supported a finding that Petitioner produced a sufficient amount of methamphetamine to create more than a normal risk to the environment. [Id. at 5].

The Government countered Petitioner's arguments by pointing out that the evidence regarding the number of times the Petitioner undertook to cook methamphetamine and the amount produced had come from the search of his

residence on February 24 and from his subsequent interviews by law enforcement on both February 24 and 25, 2005. [Id. at 6-20]. Specifically, the Government noted that, as part of the search, law enforcement discovered within Petitioner's residence acetone, muriatic acid, Red Devil lye, Heat (a solvent), brake part cleaner, starting fluid containing ether, iodine, allergy tablets, plastic tubing, stained rubber gloves, and coffee filters with red powder residue, all of which were consistent with the manufacture of methamphetamine. [Id. at 8-9]. Officers also found a jar containing liquid, which was subsequently analyzed and found to contain methamphetamine and pseudoephedrine products. [Id.].

The Government further argued that evidence from the suppression hearing showed that toys and diapers were also found in the residence, indicating that children lived there. [Id. at 6-7]. The Government also argued that, in a Mirandized interview with FBI agents on February 25, 2005, Petitioner stated that he had cooked methamphetamine in his residence at least twice per month since learning this production method; that he had cooked methamphetamine 20 to 30 times; that his largest cook yielded 16 grams, and that his usual finished product was 4 to 5 grams. [Id. at 9].

The Government maintained that conservatively calculating the number of times Petitioner cooked the methamphetamine to be 20 with an average yield of 4 grams established a minimum of 80 grams of actual methamphetamine; that the yield was actual methamphetamine because no cutting agents were found during the search; that the amount of methamphetamine attributed to Petitioner in the PSR was a conservative amount based on Petitioner's own statements, and that an even larger amount could have been attributed to him based on his statements. [Id. at 10].

Additionally, the Government argued that, aside from the time Petitioner admitted cooking methamphetamine that the meth-making products found during the search would have yielded an additional 15.9 grams of actual methamphetamine. [Id.]. Finally, countering Petitioner's argument that his cooking of methamphetamine was not hazardous to the environment, the Government argued that in Petitioner's February 24, 2005, interview with SBI agents he stated that all of the by products of this cooking efforts were poured onto the ground at a campsite near a local creek. [Id. at 7]. The Government also argued that the search of Petitioner's residence revealed that his home was plumbed so that waste water and sewage were piped into the creek that

ran next to his home. The Government contended that this evidence established that Petitioner had released hazardous waste products into the environment, thereby justifying the enhancement. [Id. at 8].

The Court overruled Petitioner's objections. Specifically, the Court found that Petitioner's contention that he was not responsible for 87.95 grams of methamphetamine was contrary to his statements to law enforcement officers in which he stated that he had cooked meth some 20 or 30 times, averaging a yield of 4 to 5 grams of finished product on each occasion; that the search of his residence indicated an active meth lab operation; that 17.9 grams of pseudoephedrine was found during the search which, based on a 100 percent theoretical yield, could have produced 15.9 grams of methamphetamine; that officers located various meth-making materials in areas where toys, diapers, and children's clothing also were found, which suggested that the area was frequented by children; that Petitioner admitted to dumping hazardous materials at a campsite and into local streams; and that the cleanup cost was $2,103.46. [Id. at 11]. The Court found that all of this evidence supported a total offense level of 37 which, when combined with criminal history category I, generated a Guidelines range of 210 to 216 months. [Id. at 12].

The Court then heard from defense counsel and Petitioner prior to sentencing. [Id. at 12-14]. In addressing the Court on behalf of Petitioner concerning punishment, defense counsel asked the Court to sentence Petitioner at the low end of the Guidelines range and to consider that even the lower end of the Guidelines range was substantial punishment for the offense. [Id. at 13]. Counsel also noted that Petitioner had made progress in improving himself by obtaining his G.E.D. and that he could possibly continue improvement through a drug treatment program while in prison. [Id. at 13-14].

Given an opportunity to address the Court, Petitioner stated: "Don't got nothing to say. I messed up. On the wrong path and in the wrong place. That's it." [Id. at 14]. The Court then sentenced Petitioner to 210 months' imprisonment, the bottom of the applicable Guidelines range, to be followed by five years' supervised release. [Id. at 14-15]. The Court entered its Judgment on January 22, 2007. [Case No. 1:05cr249, Doc. 73]. Petitioner filed a timely notice of appeal on January 23, 2007. [Id., Doc. 75].

On appeal, Petitioner challenged the District Court's denial of his motion to suppress. On October 11, 2007, the Fourth Circuit found no error and affirmed. See United States v. Jones, 250 F. App'x 579, 580 (4th Cir. 2007). Petitioner filed a petition for writ of certiorari, which was denied on February

19, 2008.  See Jones v. United States, 552 U.S. 1219, 128 S. Ct. 1316, 170 L.Ed.2d 130 (2008).

On February 5, 2009, Petitioner filed the pending motion to vacate, alleging that counsel was ineffective for failing to object to the PSR's failure to award Petitioner a three-level reduction for acceptance of responsibility, for failing to challenge the determination that Petitioner could have produced 87.95 grams of methamphetamine, for failing to object to the sentencing enhancement for environmental hazard in breach of the plea agreement, by allowing Petitioner to plead guilty to conspiring with co-defendant Coffey to manufacture with intent to distribute methamphetamine, and for failing to object to the Court's failure to consider § 3553(a) factors in imposing his sentence.  [Doc. 1].

On August 31, 2009, the Government filed its Response to the Petitioner's Motion.  [Doc. 6].  The Government's Response is accompanied by the Affidavit of attorney Carol Ann Bauer.  [Doc. 6-2].  The Government also filed a Motion for Summary Judgment, incorporating its Response by reference.  [Doc. 7].

On February 18, 2010, the Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his

obligation to file a response to the Motion for Summary Judgment, and explaining the requirement that he present his own evidence by affidavit or unsworn declarations. [Doc. 9]. On March 22, 2010, Petitioner filed a Response to Respondent's Motion for Summary Judgment, which Petitioner styled as an "Affidavit to Order and Notice 'An Unrebutted Affidavit Stands as The Truth in Commerce.'" [Doc. 13].

## STANDARD OF REVIEW

At the time that the Respondent's Motion for Summary Judgment was filed, Rule 56(c) of the Federal Rules of Civil Procedure provided that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2009).[2] The Rule further provided, in pertinent part, as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing

---

[2] Rule 56 has since been amended, but the amendment is not germane to the application of the Rule to this case.

> party does not so respond, summary judgment
> should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (2009).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under
> Rule 56(c), its opponent must do more than simply
> show that there is some metaphysical doubt as to the
> material facts. Rather, the nonmoving party must
> come forward with specific facts showing that there is
> a genuine issue for trial. Where the record taken as
> a whole could not lead a rational trier of fact to find for
> the nonmoving party, there is no genuine issue for
> trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks and citations omitted).

## DISCUSSION

## I.   Petitioner's Procedurally Defaulted Claims

First, Petitioner challenges his guilty plea and sentence, arguing that "the elements of conspiracy were not satisfied" and that the record "clearly deem[s]" Petitioner innocent of the charged conspiracy. [Doc. 1 at 6].

14

Petitioner also contends that he never conspired with his co-defendant to manufacture methamphetamine; that his attempts to make methamphetamine were for personal use and that he did not distribute or sell methamphetamine; and that during the period of his prosecution he was under the influence of methamphetamine, which he states was "obviously mind altering." [Doc. 1-1 at 1, Jones Aff. at ¶¶ 3-5]. Petitioner also alleges that his sentence was enhanced for creating an environmental hazard in breach of the plea agreement [Doc. 1-1 at 13]; that he was not awarded a reduction for acceptance of responsibility [Id. at 9]; that his sentence was based on erroneous drug amounts [Id. at 10]; and that the Court failed to consider § 3553(a) factors in determining his sentence [Id. at 16].

Petitioner did not raise these issues on appeal. Claims that could have been raised on appeal may not be asserted for the first time in a collateral proceeding unless the petitioner demonstrates cause excusing his procedural default and actual prejudice resulting from alleged errors. See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). Here, Petitioner has failed to show cause excusing his procedural default or actual prejudice resulting from these alleged errors. As such, his challenges to his guilty plea

Case 1:09-cv-00056-MR   Document 15   Filed 03/19/12   Page 15 of 32

and sentence on the merits are barred from consideration under 28 U.S.C. § 2255.

## II.    Ineffective Assistance of Counsel Claims

Petitioner frames the remaining arguments in his Motion to Vacate in terms of ineffective assistance of counsel.[3]  To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation.  Strickland v. Washington, 466 U.S. 668, 687-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71

---

[3]As Respondent notes, although Petitioner's claims are characterized as "ineffective assistance of counsel" claims, the crux of these claims is his regret over the fact that he entered a guilty plea and his dissatisfaction with his sentence, issues which as previously noted are procedurally barred from consideration under 28 U.S.C. § 2255.

L.Ed.2d 816 (1982)).  Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice."  Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)).  If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong."  Id. (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052).  In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different.  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

Counsel is presumed to be competent, and a petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983).  Conclusory allegations do not overcome the presumption of competency.  Id.  A petitioner bears an even heavier burden where the claim of ineffective assistance of counsel follows the entry of a guilty plea.  Where a defendant has pled guilty, he must show "there is a reasonable probability that, but for counsel's errors,

17

he would not have pleaded guilty and would have insisted on going to trial."
Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
Furthermore, because Petitioner attempts to challenge his sentence based on
claims of ineffective assistance of counsel, he must prove that, but for
counsel's errors, he would have received a different, more lenient sentence.
Buckner v. Polk, 453 F.3d 195, 201-08 (4th Cir. 2006).

In evaluating Petitioner's ineffective assistance claims, the Court "must
indulge a strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance; that is, the defendant must
overcome the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy." Strickland, 466 U.S. at 689,
104 S.Ct. 2052 (internal quotation omitted).

### A. Petitioner's Contention that Counsel Was Ineffective in Allowing Petitioner to Enter a Guilty Plea.

Petitioner contends that counsel rendered ineffective assistance by
allowing Petitioner to enter a guilty plea. Petitioner states in his affidavit that
his attempts to manufacture methamphetamine were for personal use and
that he did not distribute or sell methamphetamine; that he never conspired
with his co-defendant Amy Coffey to manufacture methamphetamine; and that
during prosecution of the charges against him – i.e., when he rendered his

18

guilty plea – he was under the influence of methamphetamine, "which [was] obviously mind altering." [Doc. 1-1 at 1, Jones Aff. at ¶¶ 3-5].

Petitioner also contends that counsel failed to investigate the validity of the charges against him, failed to argue that the Government must establish the elements of the offense, and erroneously advised Petitioner to enter a guilty plea "to an offense to which he [was] actually innocent." [Id. at 15]. Petitioner also asserts that his co-defendant was acting on behalf of law enforcement during the alleged conspiracy, which rendered him "actually innocent of the conspiracy count." [Id. at 14].

Petitioner's above contentions have no merit. The choice to plead guilty or not guilty was Petitioner's, not counsel's. Indeed, Petitioner appeared with counsel for trial on January 9, 2006, and after the Court's denial of his motion to suppress, Petitioner advised the Court through counsel that he desired to change his previously entered pleas of not guilty to guilty, reserving the right to appeal the denial of his motion to suppress. [Case No. 1:05cr249, Doc. 83 at 60].

The following colloquy occurred during the Rule 11 hearing regarding Petitioner's mental state:

19

THE COURT: Are you currently under the influence of any intoxicating liquors, narcotics, medicines, or drugs of any kind?

THE DEFENDANT: No, sir.

THE COURT: Are you currently under the care of a physician or have you ever been treated for mental illness or substance abuse?

THE DEFENDANT: I'm taking substance abuse classes right now.

THE COURT: Treated for substance abuse?

THE DEFENDANT: Yes, sir.

THE COURT: And did you complete that treatment –

THE DEFENDANT: I'm still in the process.

THE COURT: Is your mind clear, and do you understand that you're here today to enter a guilty plea that may not later be withdrawn?

THE DEFENDANT: Yes, sir.

[Id. at 61-62].

The Court also explained the elements the Government was required to prove to convict Petitioner of the charged drug conspiracy in violation of 21 U.S.C. §§ 846 and 841(a)(1). Significantly, Petitioner acknowledged under oath that he understood these elements and that he understood that by entering a guilty plea he was waiving his right to a jury trial. [Id. at 63-64, 66-

20

67]. Equally important, Petitioner voluntarily admitted that he was guilty of the

charged drug conspiracy:

> THE COURT: Are you entering this plea of guilty because you are, in fact, guilty of the crime charged and that you committed the acts charged in Count One of the Bill of Indictment?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, is your plea of guilty voluntary and not the result of coercion, threats or promises, other than those contained in the oral plea agreement?
>
> THE DEFENDANT: Yes, sir.

[Id. at 67].

Petitioner acknowledged to the Court that his willingness to plead guilty

was the result of prior discussions with his attorney and counsel for the

Government; that he had sufficient time to discuss any possible defenses with

his attorney; that he had told his attorney everything he wanted counsel to

know about Petitioner's case; and that he was satisfied with the services of his

attorney. [Id. at 68]. Based on Petitioner's answers to the Court's questions,

the Court found that Petitioner's plea was knowingly and voluntarily made and

that he understood the charges, the potential penalties, and the

consequences of his plea. [Id. at 68].

An "appropriately conducted Rule 11 proceeding . . . must be recognized to raise a strong presumption that the plea is final and binding." United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc). Furthermore, in evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings and satisfaction with counsel, are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299 (citing Blackledge v. Allison, 431 U.S. 63, 74-75, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)).  Indeed, such statements "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge, 431 U.S. at 74, 97 S.Ct. 1621.  Here, Petitioner has failed to provide credible evidence to overcome the facts which establish that his guilty plea was entered knowingly and voluntarily.  Therefore, his claim of ineffective assistance of counsel based on counsel allowing him to enter a guilty plea is without merit.

**B.      Petitioner's Contention that Counsel Was Ineffective in Failing to Challenge the PSR's Omission of the Award of a Three-level Reduction from His Offense Level for Acceptance of Responsibility.**

Petitioner next contends that counsel failed to challenge the PSR's omission of the award of a three-level reduction from his offense level for

acceptance of responsibility. Petitioner claims that he "pleaded very early in the case," did not challenge the charges against him, and apologized for conduct, which he argues satisfies the criteria set forth in U.S.S.G. § 3E1.1 and entitles him to the three-level reduction for acceptance of responsibility. [Doc. 1-1 at 9]. Petitioner also claims that "all parties omitted any reference to a three-level reduction for acceptance of responsibility," and that it was "unreasonable for counsel not to notice the omission." [Id.]. For the following reasons, this contention is without merit.

A defendant bears the burden at sentencing to show by a preponderance of the evidence that he is entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). See United States v. Nale, 101 F.3d 1000, 1005 (4th Cir. 1996). The entry of a guilty plea alone does not entitle a defendant to a reduction for acceptance of responsibility as a matter of right. See U.S.S.G. § 3E1.1, cmt. n.3. In assessing the sincerity of a defendant's professed acceptance of responsibility, the sentencing court has latitude to consider conduct outside the offense of conviction. See United States v. Choate, 12 F.3d 1318, 1320 (4th Cir. 1993). In addition, a district court may properly deny a reduction for acceptance of responsibility on the basis of criminal conduct committed by a defendant during the pendency of

Case 1:09-cv-00056-MR   Document 15   Filed 03/19/12   Page 23 of 32

the criminal proceedings.  See United States v. Kidd, 12 F.3d 30, 34 (4th Cir. 1993).

Here, Petitioner was indicted on October 5, 2005, and his case was scheduled for trial on January 9, 2006.  Before jury selection on that date, the Court conducted a hearing on Petitioner's motion to suppress.  Only after the Court denied Petitioner's motion did he advise the Court that he wanted to enter a guilty plea.  Thus, Petitioner's claim that he entered a guilty plea early in the case and did not contest the charged offenses is contrary to the record.  More importantly, the facts establish that Petitioner continued his criminal conduct during the pendency of these criminal proceedings by using marijuana even after pleading guilty.  The Court properly denied an acceptance of responsibility reduction based on Petitioner's continued engagement in illegal activity while on bond.  Counsel therefore had no obligation to assert a futile argument in favor of acceptance of responsibility on Petitioner's behalf.  Petitioner's claim of ineffective assistance of counsel on this issue fails.

24

**C.    Petitioner's Contention that Counsel Was Ineffective in Failing to Object to the Government's Alleged Breach of the Plea Agreement.**

Petitioner alleges that counsel was ineffective because she failed to object to the Government's breach of the plea agreement.   Specifically, Petitioner alleges that in entering the plea agreement with the Government he relied on counsel's advice "that no other enhancements would apply to his offense level outside of the two level gun enhancement," and that counsel's advice "constituted a substantial factor in his decision to plead guilty."   [Doc. 1-1 at 14].   Petitioner argues that the "government achieved [a] modification of the plea agreement" by obtaining a sentencing enhancement for creating an environmental hazard as a result of operating his meth lab.   [Id.]   Again, Petitioner's allegation is not supported by the record evidence.

The oral plea agreement consisted of three provisions: (1) Petitioner agreed to enter a guilty plea to the drug conspiracy charged in Count One of the Indictment; (2) the Government agreed to dismiss the Section 924(c) violation in Count Two; and (3) the parties agreed to a two-level enhancement for the presence of a firearm pursuant to U.S.S.G. § 2D1.1.   [[Case No. 1:05cr249, Doc. 83 at 62-63].   The Government specifically advised the Court that there had been no other negotiations between the parties.   [Id. at 63].

Significantly, Petitioner acknowledged to the Court in his Rule 11 hearing that he understood and agreed with the terms of the plea agreement as they were explained on the record by the prosecutor, and that his plea of guilty was not the result of promises other than those contained in the oral plea agreement. [Id. at 63, 67]. Because Petitioner's plea agreement contained no provision prohibiting a sentencing enhancement for Petitioner's creation of an environmental hazard, he cannot establish a breach of the plea agreement based on this sentencing enhancement.

Furthermore, counsel states in her affidavit that she filed an objection to the enhancement set forth in the PSR and argued the objection at sentencing. [Doc. 6-2 at ¶ 8]. Thus, while counsel had no basis for arguing a breach of the plea agreement, she did challenge this enhancement as unwarranted.

Because Petitioner has shown neither a breach of his plea agreement nor deficient representation of counsel as to this enhancement, his claim of ineffective assistance of counsel fails as to this issue.

**D.** **Petitioner's Contention that Counsel Was Ineffective for Failing to Object to the Drug Quantity For Which Petitioner Was Responsible.**

Petitioner next alleges that counsel was ineffective for failing to challenge the determination in the PSR that he was responsible for 87.95 grams of actual methamphetamine. In support of this claim, Petitioner disputes that he was even capable of producing that amount of methamphetamine. [Doc. 1-1 at 10]. He further contends that (1) the Government failed to produce scientific evidence from a chemist; (2) the Court did not have a factual basis to calculate the correct quantity; (3) the Government offered no evidence showing that anyone received methamphetamine from Petitioner, and (4) the Government offered no evidence to prove the purity of the methamphetamine. For the following reasons, Petitioner's challenge to the finding in the PSR that he was responsible for making 87.95 grams of actual methamphetamine is without merit.

The Government bears the burden of establishing the quantity of drugs used for sentencing calculations by a preponderance of the evidence. See United States v. Milam, 443 F.3d 382, 386 (4th Cir. 2006). If the Court relies on the drug quantity included in the PSR, the "defendant bears the burden of

establishing that the information relied on by the district court in making its findings is incorrect; mere objections are insufficient." United States v. Randall, 171 F.3d 195, 210-11 (4th Cir. 1999). "Neither the Guidelines nor the courts have required precise calculations of drug quantity." United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992).

Here, Petitioner pled guilty to Count One of the Indictment, which charged conspiracy to manufacture with intent to distribute 50 grams or more of methamphetamine. The Probation Officer found in the PSR that Petitioner was responsible for 87.95 grams of actual methamphetamine, which established a base offense level of 32, and the Government recited at sentencing each of the facts supporting the drug quantity. In particular, the Government offered an SBI Technical Field Assistance Report, showing that agents found 17.2 grams of pseudoephedrine in Petitioner's home, and that amount would have yielded 15.9 grams of actual methamphetamine. The Government also offered SBI interviews with Petitioner in which Petitioner stated that he had cooked methamphetamine 20 or 30 times, with an average yield of 4 or 5 grams per cook. While Petitioner challenged the accuracy of these statements, the Court did not clearly err in finding that the SBI correctly reported the amount of methamphetamine that Petitioner admitted to cooking.

Additionally, the Government pointed out that no cutting agents were found in Petitioner's home, supporting the inference that the methamphetamine that Petitioner produced was pure. Petitioner has failed to provide any credible evidence that counsel could have used to argue that Petitioner was responsible for a lesser amount of methamphetamine. Petitioner has simply failed to show that counsel was ineffective for challenging that amount of methamphetamine that Petitioner was found to have made. Therefore, Petitioner's ineffective assistance claim also fails as to this issue.

### E.    Petitioner's Contention that Counsel Was Ineffective in Failing to Object to the Court's Failure to Consider the Section 3553(a) Factors.

Petitioner alleges that counsel also rendered ineffective assistance by failing to object to the Court's failure to "consider the § 3553(a) factors in conjunction with the  correct guideline range." [Doc. 1-1 at 17]. Specifically, Petitioner alleges that the Court failed to "make a definitive ruling on the specific amount and type of drugs" constituting his base offense level, thus leaving doubt as to whether the drug was "pure meth or a mixture." [Id. at at 16-17]. Petitioner also contends that his proper Guidelines range was 78 to 98 months and that with a reduction for acceptance of responsibility it would have been a Guidelines range of 57 to 71 months. [Id.]. Petitioner contends

Case 1:09-cv-00056-MR   Document 15   Filed 03/19/12   Page 29 of 32

that, absent counsel's ineffectiveness, "the outcome of the proceedings would have been entirely different."  [Id. at 18].  For the following reasons, Petitioner has failed to produce sufficient evidence to support his claims.

"When rendering a sentence, the district court 'must make an individualized assessment based on the facts presented.'" United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (emphasis in original) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.E.2d 445 (2007)). Additionally, the court must state the reasons supporting its chosen sentence, and must explain its reasons sufficiently to satisfy the appellate court "that [the district court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).  As the Fourth Circuit has noted, "[t]his individualized assessment need not be elaborate or lengthy, but it must provide a rationale tailored to the particular case at hand and adequate to permit 'meaningful appellate review.'" Carter, 564 F.3d at 330 (quoting Gall, 552 U.S. at 50, 128 S.Ct. 586).  In considering the § 3553(a) factors, the Court "need not 'robotically tick through § 3553(a)'s every subsection." Id. at 329 (quoting United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006)).

Here, a review of the record makes clear that the Court properly conducted an individualized assessment that was tailored specifically to Petitioner and his case. While the Court did not recite the § 3553(a) factors in explaining its reasoning, Petitioner has not shown a reasonable likelihood that he would have received a lower sentence had counsel requested a more specific explanation from the Court. Thus, Petitioner has demonstrated neither deficient performance by his counsel, nor has he shown prejudice, and his claim of ineffective assistance of counsel on this issue fails as well.

In sum, for the reasons stated herein, the Court must conclude that Petitioner's claims are without merit and the Court will, therefore, grant summary judgment to Respondent on Petitioner's § 2255 Motion to Vacate.

Finally, Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his

Motion to Vacate states a debatable claim of the denial of a constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).  As a result, the Court declines to issue a certificate of appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.


**O R D E R**

**IT IS, THEREFORE, ORDERED THAT:**

1.    Respondent's Motion for Summary Judgment [Doc. 7] is **GRANTED**;

2.    Petitioner's § 2255 Motion to Vacate [Doc. 1] is **DENIED** and **DISMISSED**; and

3.    The Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: March 19, 2012

Martin Reidinger
United States District Judge

32